**Docket No. 19-35852**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

MOI MICHAEL, an individual,

*Plaintiff-Appellant,*

v.

CHIHULY STUDIO, INC., a Washington corporation,
DALE CHIHULY, individually and as a married person and
LESLIE CHIHULY, individually and as a married person,

*Defendants-Appellees.*

*Appeal from a Decision of the United States District Court for the Western District of Washington,*
*No. 2:17-cv-00853-RSL · Honorable Robert S. Lasnik*

## APPELLANT'S REPLY BRIEF

LINCOLN C. BEAUREGARD, ESQ.
CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, Washington 98403
(253) 593-5100 Telephone
(253) 593-0380 Facsimile

PHILIP A. TALMADGE, ESQ.
GARY W. MANCA, ESQ.
TALMADGE/FITZPATRICK
2775 Harbor Avenue SW
Suite C, Third Floor
Seattle, California 98126
(206) 574-6661 Telephone
(206) 575-1397 Facsimile

*Attorneys for Appellant Moi Michael*

 COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

A.  INTRODUCTION ........................................................................1

B.  ARGUMENT IN REPLY................................................................1

    (1)  Chihuly's Brief Does Not Show He Was Entitled to Keep
        Moi's Joint Authorship Claim from a Jury ...........................................1

        (a)  Chihuly Fails to Apply the "Reasonable Jury" Standard
            on Summary Judgment for this Fact-Intensive Question ..........1

        (b)  Chihuly's Arguments in Favor of His Sole Authorship as
            a Matter of Law Cannot Be Reconciled with the
            Copyright Act.................................................................................4

            (i)  Chihuly's Argument Fails on Its Own Terms
                Because He Cannot Identify Paintings to Which
                He Made Specific Contributions and Does Not
                Articulate His Control of the Disputed Paintings
                with Any Specificity.........................................................5

            (ii)  To Overcome His Inability to Show His Sole
                Authorship, Chihuly's Brief Relies on an
                Untenably Strict and Undesirable Theory of Joint
                Authorship .....................................................................13

        (c)  Chihuly's Arguments About Experts' Trial Testimony Is
            Premature and Wrong ...............................................................18

        (d)  A Jury Should Decide the Accrual Date Under the
            Copyright Act's Statute of Limitations.....................................19

    (2)  Chihuly's Brief Does Not Show He Was Entitled to Keep
        Moi's Promissory Estoppel Claim from a Jury...................................20

(3)    Chihuly Still Fails to Carry His Burden of Showing that His Confidential Settlement Agreements Were Not Discoverable ...........23

(4)    Chihuly's Brief Fails to Support the District Court's Attorney Fee Award .................................................................................24

C.    CONCLUSION..............................................................................30

CERTIFICATE OF COMPLIANCE.......................................................31

CERTIFICATE OF SERVICE ...............................................................32

# TABLE OF AUTHORITIES

## CASES

*16 Casa Duse, LLC v. Merkin*,
791 F.3d 247 (2d Cir. 2015) ........................................................... 17

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) ............................................ 5, 10, 16, 17, 19

*Aetna Cas. & Sur. Co. v. Merritt*,
974 F.2d 1196 (9th Cir. 1992) ........................................................ 8

*Ahanchian v. Xenon Pictures, Inc.*,
403 F. App'x 166 (9th Cir. 2010) ................................................... 17

*Baker v. Selden*,
101 U.S. 99 (1879) ..................................................................... 12

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985), *cert. denied*,
474 U.S. 826 (1985) .................................................................. 12

*Brownstein v. Lindsay*,
742 F.3d 55 (3d Cir. 2014) ........................................................... 19

*Burrow–Giles Lithographic Co. v. Sarony*,
111 U.S. 53, 61 (1884) ........................................................... 10, 13

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik*
*G.m.b.H. & Co. KG.*,
510 F.3d 77 (1st Cir. 2007), *cert. denied*,
555 U.S. 815 (2008) .................................................................. 19

*Cmty. for Creative Non–Violence v. Reid*,
490 U.S. 730 (1989) ................................................................... 10

*Cooper v. NCS Pearson, Inc.*,
733 F.3d 1013 (10th Cir. 2013) ..................................................... 19

*Crosswhite v. Wash. State Dep't of Soc. & Health Servs.*,
197 Wn. App. 539 (2017) ............................................................ 22

*Direct Techs., LLC v. Elec. Arts, Inc.*,
836 F.3d 1059 (9th Cir. 2016) ............................................... 2, 4, 17

*Doc's Dream, LLC v. Dolores Press, Inc.*,
959 F.3d 357 (9th Cir. 2020) ........................................................24

*Dumas v. Gommerman*,
865 F.2d 1093 (9th Cir. 1989) .............................................22, 23

*Elliott Bay Seafoods, Inc. v. Port of Seattle*,
124 Wn. App. 5 (2004) ................................................................22

*Everly v. Everly*,
958 F.3d 442 (6th Cir. 2020) ........................................................19

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir. 1996) ..........................................................26

*Folkens v. Wyland Worldwide, LLC*,
882 F.3d 768 (9th Cir. 2018) .............................................3, 4, 13

*Gaiman v. McFarlane*,
360 F.3d 644 (7th Cir. 2004) .......................................15, 16, 19, 20

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) .................................................25, 26

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985).................................................................12, 13

*Howard v. Fitzgerald*,
58 Wn.2d 403 (1961) ....................................................................22

*In re E.R. Fegert, Inc.*,
887 F.2d 955 (9th Cir. 1989) ........................................................25

*Kirtsaeng v. John Wiley & Sons, Inc.*,
__ U.S.__, 136 S. Ct. 1979 (2016) .........................................26, 29

*Klinke v. Famous Recipe Fried Chicken, Inc.*,
94 Wn.2d 255 (1980)....................................................................20

*Lectus, Inc. v. Rainier National Bank*,
97 Wn.2d 584 (1982)..............................................................21, 22

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984), *cert. denied*,
470 U.S. 1052 (1985).....................................................................3

*Lopez v. Musinorte Entm't Corp.*,
2007 WL 579746 (9th Cir. 2007) ................................................................17

*Mahan v. Roc Nation, LLC*,
634 F. App'x 329 (2d Cir. 2016) ..................................................................9

*Maurel v. Smith*,
220 F. 195 (S.D.N.Y. 1915) .........................................................................9

*Mazer v. Stein*,
347 U.S. 201 (1954).....................................................................................14

*Meissner v. Simpson Timber Co.*,
69 Wn.2d 949 (1966)...................................................................................21

*Oracle Am., Inc. v. Google Inc.*,
750 F.3d 1339 (Fed. Cir. 2014), *cert. denied*,
576 U.S. 1071 (2015)...................................................................................12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
971 F.3d 1042 (9th Cir. 2020) ......................................................................4

*Phillips ex rel. Estates of Byrd v. Gen. Motors*,
307 F.3d 1206 (9th Cir. 2002) ....................................................................23

*Rand v. Rowland*,
154 F.3d 952 (9th Cir. 1998) (en banc), *cert. denied*,
527 U.S. 1035 (1999)...............................................................................2, 3

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
531 F.3d 962 (9th Cir. 2008), *cert. denied*,
555 U.S. 1137 (2009)..............................................................................9, 15

*S.O.S., Inc. v. Payday, Inc.*,
886 F.2d 1081 (9th Cir. 1989) ......................................................................1

*Skidmore as Tr. for Randy Craig Wolfe v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (en banc), *cert. denied*,
__ U.S. __, 2020 WL 5883816 (2020) ....................................................4, 12

*State Farm Mut. Auto Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*,
315 F.R.D. 220 (E.D. Mich. 2016)..............................................................24

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ........................................................................4

v

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) ........................................................... 9

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
    715 F.2d 1327 (9th Cir. 1983) ................................................... 2, 3

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ........................................................ 2

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) .............................................. 12, 13

## CONSTITUTIONS

U.S. Const., art. I, § 8, cl. 8 ..................................................................... 14

## STATUTES

17 U.S.C. § 101 ..................................................................... 15, 16, 27

17 U.S.C. § 102(b) ...................................................................... 12

17 U.S.C. § 507(b) ...................................................................... 19

## OTHER AUTHORITIES

9th Cir. Manual of Model Civil Jury Instr. § 17.9 ................................. 16, 17

Compendium of U.S. Copyright Office Practices ch. 900, § 906.1 at 6
    (3d ed. 2017), available at https://www.copyright.gov/comp3/ ................... 13

Fed. R. Civ. P. 26(b) ................................................................... 23

Fed. R. Civ. P. 26(c) .................................................................... 23

H.R. Rep. No. 94-1476 (1976) ........................................................ 16

## A.    INTRODUCTION

"To be an author," this Court has long recognized, "one must supply more than mere direction or ideas." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989). Instead, "one must translate[] an idea into a fixed, tangible expression entitled to copyright protection." *Id.* (quotation omitted). Chihuly glides over this unassailable principle, insisting that Moi got the ideas from Chihuly (doesn't matter), did not identify the paintings he contributed to (not so), cannot identify his contributions to each one (but Chihuly admitted that he can't identify his own either), and does not meet the *Aalmuhammed* factors (that is a jury question, and those factors are optional guidance in any event). Chihuly cherry picks the evidence he prefers to justify a strict reading of copyright law. But neither the record, when viewed under the correct standard of review, nor copyright law support Chihuly. This Court should reverse and remand Moi's joint authorship and promissory estoppel claims for trial.

## B.    ARGUMENT IN REPLY

### (1)    Chihuly's Brief Does Not Show He Was Entitled to Keep Moi's Joint Authorship Claim from a Jury

#### (a)    Chihuly Fails to Apply the "Reasonable Jury" Standard on Summary Judgment for this Fact-Intensive Question

Chihuly's brief does not consistently apply the correct standard of review. Summary judgment should not be granted in a joint authorship dispute if "[a]

1

reasonable jury could decide these questions in either party's favor." *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1062 (9th Cir. 2016). In making this determination, "this court must view the evidence and inferences therefrom in the light most favorable to the nonmoving party." *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328-29 (9th Cir. 1983) (citation omitted).

But Chihuly's brief mistakenly treats the district court's order as a set of "findings of fact" entitled to deference:

- "Moi cannot dispute this finding." Chihuly Br. at 25.

- "Moi does not dispute these findings." *Id.* at 30.

- "Moi does not contest these findings …." *Id.* at 34.

- "Moi cannot dispute this finding." *Id.* at 47.

But "[a] district court does not, of course, make 'findings of fact' in ruling on a summary judgment motion," *Rand v. Rowland,* 154 F.3d 952, 957 n.4 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999) (internal quotation marks and citation omitted). Chihuly's slipups show that his analysis of the record is not animated by the correct standard of review, probably because the "reasonable jury" standard undermines his argument for summary judgment. This Court may ignore Chihuly's imagined findings of fact, which would not be entitled to deference even if the district court had purported to make them. *See, e.g.*, *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (confirming review is *de novo*).

Chihuly's disregard for the reasonable jury standard is acute in his selective discussion about Moi's deposition. *See* Chihuly Br. at 20-24. Chihuly's brief tries to score points from Moi's statements about some paintings that Moi had *not* positively identified as one he had contributed to. *See* ER 992-93, 1124-25. But as Chihuly himself has admitted, the collaborative process was fluid, and not even he could say with total certainty who did what on which paintings. ER 1470, 1472. Still, Moi's opening brief set out evidence allowing a reasonable jury to find that Moi worked on 285 identified paintings. *E.g.*, Appellant's Br. at 4-9, 26. Moi's deposition statements are simply fodder for cross examination at trial, and Moi's argumentation simply underscores that there is a genuine dispute for trial.

Chihuly cannot dispute the jury's role. "Authorship is a question of fact," *S.O.S.*, 886 F.2d at 1086 (citation omitted), and juries are instructed on the legal standards to be applied. *See* 9th Cir. *Manual of Model Civil Jury Instr.* §§ 17.8, 17.9. This Court has repeatedly confirmed the importance of juries in Copyright Act cases, no matter how big the stakes. In the first decade after Congress passed the Act, this Court heard two appeals about blockbuster movies. In both, this Court recognized that summary judgment is "disfavored." *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984), *cert. denied*, 470 U.S. 1052 (1985); *Twentieth Century-Fox*, 715 F.2d at 1330 n.6. Since then, this Court has continued to warn that summary judgment remains *disfavored* in copyright cases. *Folkens v. Wyland Worldwide,*

3

*LLC*, 882 F.3d 768, 774 (9th Cir. 2018); *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). And this Court has continued to reverse summary judgments and remand copyright cases for trial. *See, e.g.*, *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020) (copyright infringement claims); *Direct Techs.*, 836 F.3d at 1069 (joint authorship). In other procedural postures, too, this Court defers to juries in copyright cases. Just this year, this Court decided that the jury's verdict rendered one of the party's arguments moot in the copyright lawsuit involving Led Zeppelin's hit song *Stairway to Heaven*. *See Skidmore as Tr. for Randy Craig Wolfe v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020) (en banc), *cert. denied*, __ U.S. __, 2020 WL 5883816 (2020). In short, the factfinder's role remains as vital as ever in this circuit.

### (b) Chihuly's Arguments in Favor of His Sole Authorship as a Matter of Law Cannot Be Reconciled with the Copyright Act

According to Chihuly's brief, a joint authorship claim comprises several elements that must be proven in roughly three stages. Chihuly Br. at 16-17, 19-38. But Chihuly's legal framework for joint authorship suffers from two main flaws. *First*, under it, a reasonable jury could find that Chihuly was not even a sole author of the identified paintings, let alone a joint author with Moi. By failing on its own terms, Chihuly's strict framework for joint authorship betrays itself to be as hollow as Chihuly's claim to sole authorship. If Chihuly cannot show his own sole authorship of the identified paintings is undisputable, then he cannot foreclose a

4

reasonable jury deciding Moi's claim to joint authorship. *Second*, neither *Aalmuhammed*[1] nor other precedents support Chihuly's inflexible multi-part test for joint authorship, as though a claimant must jump cleanly through each hoop just to get to a jury.

>  (i) **Chihuly's Argument Fails on Its Own Terms Because He Cannot Identify Paintings to Which He Made Specific Contributions and Does Not Articulate His Control of the Disputed Paintings with Any Specificity**

At the outset, Chihuly cannot establish the absence of a genuine issue of fact on his specific copyrightable contributions to each painting. Chihuly has been insistent on this point as an unshakeable requirement for joint authorship. *See* Chihuly Br. at 19-20. Viewed in the light least favorable to him, the record shows he did not contribute to many paintings *at all*, except for his signature, and sometimes he did not even do that. Start with the fact that Chihuly's recollection about individual paintings is non-existent. He admitted that he relies on other artists to make the paintings he sells as his own. ER 1472 ("I use assistants."). When asked to describe the process for creating paintings, Chihuly could not do it, dodging questions and speaking only in vague terms about his own contributions:

>  Q. Can you describe for me the general process you used for making some of the paintings and the art.

---

[1]  *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000).

> A. It's too complicated to explain. I've been doing it for 30 years. I do it differently at different times. So it's very—you'd have to see it to understand it.
>
> Q. Can you tell me, if you were to try and explain to somebody who is just not familiar with the process, how you use assistants, in a general sense.
>
> A. I would never try to explain that. …
>
> Q. Okay. Are you saying that you are not capable of offering some sort of explanation orally on how you use assistants?
>
> A. I've never thought about it. I just use—I mean, I think it's somewhat understandable if you say, I make a painting, and I use assistants.

ER 1472. Chihuly went on to compare his collaborative process to Michelangelo's, but he also drew a revealing contrast:

> A. There [in Michelangelo's work process], you can kind of explain it because each person had a separate part to do. *When I work, it's more complicated than that; different people do different things at different times.*
>
> Q. So are you choosing not to answer the question, or you can't elaborate?
>
> A. I can't elaborate.

*Id.* (emphasis). When given the chance, Chihuly could not do what he argues that Moi must: identify the discrete, separate contributions that he made to each individual painting. Chihuly admitted that at least *four* other artists contributed to Chihuly-signed paintings: Billy O'Neil, Piper O'Neill, Damien Villareal, and Mike Robinson. ER 1469. But for Chihuly, the artists' process was so collaborative and

6

fluid—it was not, he said, a process where "each person had a separate part to do," because "different people do different things at different times"—he could not describe it. *Id.* From Chihuly's testimony alone, then, a reasonable jury may infer that Chihuly did not make any specific, identifiable contributions to the disputed paintings. Perhaps he contributed to them, but no one, not even him, could identify what he did with any specificity.

Other witness testimony, which must be construed against Chihuly, buttresses this reasonable inference from Chihuly's admissions. According to Moi, whose recollection was confirmed by Piper O'Neill on this point, Chihuly signed some paintings that "he had nothing to do with" during the process of creating them. ER 1076, 1410, 1440, 1465. He simply came along later and signed them. *Id.* Chihuly admitted as much during his deposition:

> Q. … [D]oes anyone ever—someone else paint a painting, bring it to you, and your only contribution is signing it?
>
> A. Yes.

ER 1470.

Other evidence shows that Chihuly did not touch many paintings other than with his signature. First, Chihuly was absent from many work sessions due to his health. ER 33, 1046, 1199, 1248, 1379, 1410, 1440-41, 1472. As Moi said, between 2007 and 2014, "I do not recall Dale physically participating in the painting sessions I was present at. He would sporadically make brief appearances but did not actually

7

paint nor did he provide any direction." ER 33-34. Second, Chihuly churned out tens of thousands of paintings—so many that he does not even know the exact number. ER 1470. During work sessions, the large indoor and outdoor spaces at Chihuly's lakeside building were covered edge to edge with French watercolor paper. ER 1379. Given the large volume and assembly-line production, Chihuly could not possibly have worked on every painting. A reasonable jury may find, then, that for any given painting that Chihuly did not contribute to it. So he was not an author at all.

Chihuly rejoins, of course, that he signed all the paintings and thusly claimed authorship. But he is wrong about the facts. Moi testified in his declaration that Billy O'Neill sometimes signed Chihuly's signature for him. ER 1379. And at this stage, Moi's statement must be credited. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) ("[W]e accept that declaration as true for summary judgment purposes.").

This factual hole in Chihuly's position aside, the law also does not support him. Chihuly testified during his deposition that his signature was enough to make him author:

> Q.    … What do you think determines ownership on a piece of art, the law or your opinion?
>
> A.    I think the ownership of a piece of art is owned by the person that signs it.

8

ER 1470. And Chihuly's attorneys press his view on appeal. Chihuly Br. at 31, 33, 44. They even cite the coffee-table book published by Chihuly's own company; the book acclaimed Chihuly's signature in breathless tones, recasting Chihuly's signature as an "important linear concept" that "asserts a unity between his work and himself." ER 1222, 1236. But Chihuly cites *no case* holding that a bare signature, without any other expressive contributions to a work, can ever be enough for a jury to find authorship. *See* Chihuly Br. at 33-34. In the cases Chihuly cites for, the courts did not consider a person making a claim to sole authorship who made no expressive contributions. *See Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 969 (9th Cir. 2008), *cert. denied*, 555 U.S. 1137 (2009) (movie credits cited as grounds for excluding joint authorship claim, not as sufficient to vest sole authorship in someone who made no expressive contribution); *Thomson v. Larson*, 147 F.3d 195, 203 (2d Cir. 1998) (credited author was the playwright, not someone who merely affixed their signature to the script); *Mahan v. Roc Nation, LLC*, 634 F. App'x 329, 331 (2d Cir. 2016) (copyright ownership statement on music albums related to the statute of limitations, not a claim of sole authorship).

Joint authorship has long been held to require, at minimum, "'sharing the labor,'" *Richlin*, 531 F.3d at 967 (quoting *Maurel v. Smith*, 220 F. 195, 199 (S.D.N.Y. 1915) (Hand, J.)), and so sole authorship must require labor too. In this same vein, the Supreme Court explains that "the author is ... the person who

translates an idea into a fixed, tangible expression." *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 737 (1989). The Copyright Act is about expressive *work.* Here, signing a painting after the actual work is finished can hardly be the labor necessary to establish authorship.

For similar reasons, Chihuly's argument fails because he cannot show a reasonable jury must find that he solely superintended the works' creation. The artist who exercises control, explains *Aalmuhammed*, "will likely be" the artist who arranges a picture's elements or is "'the inventive or master mind' who 'creates, or gives effect to the idea.'" *Id.* (quoting *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)). But here, Chihuly was often absent during work sessions and signed—or had Billy O'Neill sign—paintings that he did not otherwise touch. ER 33, 1046, 1076, 1199, 1410, 1440-41, 1465, 1472. Even when he personally signed a painting, then, he often did not have any input in the painting's creation, because he was not there. In fact, Chihuly was so hands off and absent that he admits he cannot say who did what:

> Q.   And if you created art, you would know who contributed to it, who made it?
>
> A.   No, I wouldn't, necessarily.

ER 1470. He also does not dispute Piper O'Neill's testimony that Chihuly often did not even do compositional work, "depending on Dale's energy level." ER 1464. And Chihuly does not dispute her recollection of seeing Billy O'Neill and Moi painting

10

by themselves one day, or her testimony that "Michael did participate." ER 1464, 1466. These collaborators, far from simply serving as Chihuly's "hands," used their own artistic judgment. "I wouldn't say that there's a formula per se," said Piper O'Neill. ER 1464. "Each work was unique." *Id.* The bottom line is that Chihuly was an absentee, not the person who arranged the artistic elements or gave effect to the ideas. He did not exercise supervisory control, and no reasonable jury could find otherwise on this record.

**(ii)**     **To Overcome His Inability to Show His Sole Authorship, Chihuly's Brief Relies on an Untenably Strict and Undesirable Theory of Joint Authorship**

Perhaps realizing the weakness of his own authorship claims, Chihuly tacitly asks this Court to change copyright law, beginning with his arguments about the significance of the "concepts, artistic vocabulary, and techniques employed" that Chihuly supposedly developed. Chihuly Br. at 30. Chihuly relied on these ideas for two arguments: *First*, he asserted that Moi could not have made any original contributions because Chihuly's "archetypical … forms" were in the paintings, *id.* at 26-27. *Second*, he contended that Chihuly must have exercised supervisory control over the paintings because Moi and others were giving effect to Chihuly's ideas. *Id.* at 30.

But the Copyright Act's text rejects copyright protection for those intangible things. The Act provides: "In no case does copyright does copyright protection for

11

an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). This Congressional limitation on copyright codifies a copyright concept— the "idea/expression dichotomy"—that goes back to the 1800s. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1354 (Fed. Cir. 2014), *cert. denied*, 576 U.S. 1071 (2015) (tracing the concept back to *Baker v. Selden*, 101 U.S. 99, 101 (1879)). And this Court steadfastly recognizes it. *See, e.g.*, *Skidmore*, 952 F.3d at 1069 ("[I]deas, concepts, and common elements are excluded."); *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985), *cert. denied*, 474 U.S. 826 (1985) ("General ideas ... remain forever the common property of artistic mankind."). While Chihuly insists that "Chihuly trained Moi to mimic Chihuly's signature style," Chihuly Br. at 32, the Copyright Act does not protect something as ephemeral and intangible as "style." This Court confirmed this boundary just two years ago in a music case, holding that precedent in this circuit "does not grant license to copyright a musical style." *Williams v. Gaye*, 895 F.3d 1106, 1138 (9th Cir. 2018).

While Chihuly argues that Moi could be nothing more than a copycat, not the author of an independently copyrightable contribution to the identified paintings, "copyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original." *Harper & Row Publishers,*

12

*Inc. v. Nation Enterprises*, 471 U.S. 539, 548 (1985). Chihuly's "signature artistic

… vocabulary," Chihuly Br. at 4, is not original because it comprises geometric

shapes and forms found in nature:



ER 1340 ¶ 20 (*Float*, *Basket*, and *Reed* series paintings, from left to right). Geometric

shapes are not original and thus not copyrightable. *See* U.S. Copyright Office,

*Compendium of U.S. Copyright Office Practices* ch. 900, § 906.1 at 6 (3d ed. 2017)*,*

*available at* https://www.copyright.gov/comp3/. Likewise, "no artist may use

copyright law to prevent others from depicting ideas first expressed by nature."

*Folkens*, 882 F.3d at 775. What matters is the arrangement, the "combination of

unprotectible elements." *Williams*, 895 F.3d at 1137 (quotation omitted). The person

who makes a copyrightable contribution is not the one who fashions an idea, but the

person who "gives effect to the idea." *Burrow–Giles*, 111 U.S. at 61. Here, given

Chihuly's absenteeism, collaborators like Moi were the ones who made the express arrangements and gave effect to the ideas.

Chihuly's theory of copyright law is so overbroad that it would harm artistic development and innovation—copyright law's canary in the coal mine. Copyright law is meant not to stifle, but "[t]o promote the progress of science and useful arts." U.S. Const., art. I, § 8, cl. 8. Given this constitutional purpose, this Court must reject any construction of copyright law that inhibits, rather than promotes, progress in the arts. The world would have less art, not more, if past artists could claim exclusive rights in intangibles like "style" and "artistic vocabulary." Musical genres (jazz, hip hop, blues, and rock and roll) and painting "schools" (cubism, impressionism, modernism, and pop art) would be owned by a single artist. In short, Chihuly's reliance on such ideas to establish authorship would undermine copyright law's "purpose of enriching the general public through access to creative works." *Fogerty*, 510 U.S. at 527.

Besides harming progress in the arts, Chihuly's legal argument about his ideas, if accepted, would sneak patent and trademark law concepts into copyright law. But the courts have sniffed out such attempts before. "Unlike a patent," the U.S. Supreme Court cautioned decades ago, "copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself." *Mazer v. Stein*, 347 U.S. 201, 217 (1954).

14

This Court also should reject Chihuly's insistence that each co-author must make a separately identifiable and independently copyrightable contribution to qualify a work as a "joint work" under 17 U.S.C. § 101. That does remain the general rule under this Court's cases. *See, e.g.*, *Richlin*, 531 F.3d at 968. But this Court should recognize that it is not the *only* way to establish co-authors made a joint work, as the Seventh Circuit holds. *Gaiman v. McFarlane*, 360 F.3d 644, 658 (7th Cir. 2004). By fashioning an inflexible judge-made test that requires a plaintiff to show a separate contribution, this Court risks a conflict with the Act itself. As the Copyright Act says, contributions might be "inseparable" and yet form a joint work. 17 U.S.C. § 101. The general rule does not account for that scenario where no contribution to a joint work can "stand alone because of the nature of the particular creative process that had produced it." *Gaiman*, 360 F.3d at 659.

Again, Chihuly himself admitted that the team's painting process was so fluid and collaborative that he himself could not even describe it or identify the brush strokes of each artist. ER 1470, 1472. So Moi's evidence about his contributions dovetails with Chihuly's own testimony, confirming that Moi made "inseparable" contributions to the works that he identified. 17 U.S.C. § 101. If a strict extra-textual test were to apply to collaborative and fluid work processes like this one, "it would be paradoxical if though the result of their joint labors had more than enough

originality and creativity to be copyrightable, no one could claim copyright. That would be peeling the onion until it disappeared." *Gaiman*, 360 F.3d at 658-59.

The Act's surrounding text and legislative history supports the Seventh Circuit's view. It is a "collective work," not a "joint work," that the Act says comprises "a work … in which a number of contributions, constituting separate and independent works themselves, are assembled into a collective whole." 17 U.S.C. § 101. By separately defining a "joint work," Congress evidently believed that copyright law should protect also those works that are not made from independently copyrightable parts. The House Report confirmed this legislative intent: "The touchstone here is the intention, at the time the writing is done, that the parts be absorbed or combined into an integrated unit, although the parts themselves may be … 'inseparable' (as the case of a novel or painting)." H.R. Rep. No. 94-1476, at 120 (1976). This interpretation also aligns with the purposes of copyright, as it makes artistic collaborations more likely.

Chihuly's strict application of the *Aalmuhammed* factors is also off base. A jury decides what to conclude from the *Aalmuhammed* factors. Indeed, this Circuit's model jury instructions include these factors, 9th Cir. *Manual of Model Civil Jury Instr*. § 17.9, and *Aalmuhammed* itself explained that a determination of the artists' objective intent "must of necessity focus on the facts," 202 F.3d at 1235. Confirming that the *Aalmuhammed* factors are for a jury to decide, this Court has found a genuine

16

issue for trial under the *Aalmuhammed* factors many times. *See, e.g.*, *Direct Techs.*, 836 F.3d at 1069 (applying *Aalmuhammed* factors and concluding that "this issue warrants decision by a jury"); *Ahanchian v. Xenon Pictures, Inc.*, 403 F. App'x 166, 169 (9th Cir. 2010) (same); *Lopez v. Musinorte Entm't Corp.*, 2007 WL 579746 at *1 (9th Cir. 2007) (same).

A jury also decides whether to even apply the *Aalmuhammed* factors. The model jury instructions explain to jurors that they "*may* consider" those factors. 9th Cir. *Manual of Model Civil Jury Instr.* § 17.9. (emphasis added). Not "must," but "may." *See id.* By casting the *Aalmuhammed* factors as an optional source of guidance, this instruction does no violence to *Aalmuhammed*, which itself described its three factors as simply "*among* the criteria for joint authorship, in the absence of contract." 202 F.3d at 1234 (emphasis added). Making this point even clearer, *Aalmuhammed* rejected a "rigid formula, because the creative relationships to which they apply vary too much." *Aalmuhammed*, 202 F.2d at 1235. Other circuits have also rejected a one-size-fits-all approach to the standard for joint authorship. *See, e.g.*, *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 256 n.4 (2d Cir. 2015). In short, Chihuly is wrong that a rigid formula is not the only way that a reasonable jury may consider the joint authorship issue here.

### (c) Chihuly's Arguments About Experts' Trial Testimony Is Premature and Wrong

Chihuly asks this Court to decide Chihuly's *Daubert* motions, but those were targeted at the *trial* testimony of Moi's experts, not their use on *summary judgment*. SER 149-79. Chihuly's brief quotes Moi's opposition to those motions out of context. *See* Chihuly Br. at 39. In context, Moi was simply arguing that while a jury did not strictly need expert testimony, Thompson's opinion would still be helpful, particularly to rebut Chihuly's elitist theory that a man like Moi could not have possibly made a joint work with a famed artist like Chihuly. *See* SER 28-32. Consistent with that point, Moi actively relied on Thompson's opinion when opposing summary judgment. ER 1380, 1397-98. Chihuly raised no objection at that stage, and he cannot complain now.

In any event, Chihuly is wrong that Thompson's testimony would not help a jury. Chihuly cites no case holding that an expert may testify only about industry standards. *See* Chihuly Br. at 40-42. And given the drumbeat of authorities holding that the intent to make a joint work is fact intensive, Thompson's testimony would have helped a jury decide whether Moi and Chihuly had the requisite intent. *See* ER 1563-64 ("inseparable, symbiotic, and codependent").

### (d) A Jury Should Decide the Accrual Date Under the Copyright Act's Statute of Limitations

Chihuly's brief maintains his partial defense that the Copyright Act's three-year statute of limitations, 17 U.S.C. § 507(b), bars Moi's claims to jointly authoring paintings created before February 21, 2014. Chihuly Br. at 43-45. Like on the merits, Chihuly ignores the jury's role. Chihuly Br. at 43. But the accrual date "may not be resolved on summary judgment when the record shows 'a genuine issue of material fact as to whether such repudiation occurred.'" Appellant's Br. at 34 (quoting *Everly v. Everly*, 958 F.3d 442, 456 (6th Cir. 2020)); *accord Aalmuhammed*, 202 F.3d at 1231. Repudiation is a jury question. *Brownstein v. Lindsay*, 742 F.3d 55, 64, 75 (3d Cir. 2014); *Gaiman*, 360 F.3d at 657.

Under the correct standard of review, a reasonable jury may find that Moi's claims accrued within the three-year limitations period. Sure, Moi knew that Chihuly sold the paintings. ER 1104, 1156-57. But unlike in *Aalmuhammed*, 202 F.3d at 1231, *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. KG.*, 510 F.3d 77, 91 (1st Cir. 2007), *cert. denied*, 555 U.S. 815 (2008), and *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1016-17 (10th Cir. 2013), where any public repudiations were not coupled with private reassurances, Chihuly's private remarks to Moi accepted Moi's contributions. "I was always told by Dale," recalled Moi, "I was going to get paid, and I, you know, would receive my compensation down the—he, you know, promised me that." ER 1158. Moi elaborated, "I was told

19

that the accounting department logged which paintings that I participated in creating." ER 1380.

In determining whether a repudiation has occurred, the Seventh Circuit draws by analogy on the law of adverse possession: "If the claim is not adverse, as where a tenant occupies the owner's property—or, even more to the point, where a cotenant occupies property, because a joint copyright owner *is* a cotenant—the statute of limitations does not begin to run." *Gaiman*, 360 F.3d at 654 (citations omitted). Here, nothing in the record showed that Chihuly acted without Moi's assent. To the contrary, "It was my clear understanding from our repeated conversations," says Moi, "that we were working together, as a team, to create a large portfolio of valuable art work." ER 1380. With Chihuly's private assurances, and their close relationship, Moi did not realize until 2015, after Chihuly terminated Billy O'Neill, that Chihuly did not intend to honor their understanding. ER 1157. These facts showed a question for a jury to resolve.

**(2)** **Chihuly's Brief Does Not Show He Was Entitled to Keep Moi's Promissory Estoppel Claim from a Jury**

Chihuly's brief says nothing about the equities of this case. The Washington Supreme Court has explained that promissory estoppel may be used when "necessary to effectuate justice." *Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 262, 616 P.2d 644 (1980). The district court itself seemed to recognize the injustice of Moi having no remedy here. The court concluded that "plaintiff made

20

original artistic contributions that were independently copyrightable," and the court admitted that Moi's contributions "[a]bsolutely" were "something of value," ER 19, 411. The district court also questioned why Chihuly had never compensated Moi for his time. ER 422. It is not justice for Chihuly to take Moi's time and his valuable contributions, while giving *nothing* in return other than accusations of fraud and misconduct.

Chihuly is wrong that no reasonable jury could find that Moi suffered a detrimental change in position. Chihuly Br. at 49-50. Moi explained that he spent his time at painting sessions but would not have unless Chihuly made his promise: "Mr. Chihuly repeatedly promised that I would be compensated for my participation. … Why would I devote many evenings and weekends over a period of years working for free?" ER 1380. Moi's testimony was enough to show a genuine dispute for a jury about whether Moi relied to his detriment on Chihuly's assurances.

A reasonable jury also may find that Chihuly's assurances were a binding promise. Chihuly is wrong that his assurances were too vague for a reasonable jury to find against him, and none of the precedent he cites suggests otherwise. In *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 956, 421 P.2d 674 (1966), the plaintiff acknowledged that the defendant's pledge to pay royalties was just "like a good friend passing along good news," not a promise made in a way that he thought the defendant had made a commitment. In *Lectus, Inc. v. Rainier National Bank*, 97

21

Wn.2d 584, 589, 647 P.2d 1001 (1982), the promise was conditional, not too indefinite to enforce. The unpublished Washington opinions have no precedential value, *Crosswhite v. Wash. State Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 544, 389 P.3d 731 (2017), and the authorities from California and district court also are not controlling. A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 13, 98 P.3d 491 (2004) (quotation omitted). Moi testified that Chihuly had made such a promise. ER 1380.

Most critically, Chihuly has no answer for Moi's observation that a promise to pay money need not specify "the exact amount to be paid." *Howard v. Fitzgerald*, 58 Wn.2d 403, 405, 363 P.2d 386 (1961). The context reinforces this point. Moi had a close friendship at the time with Chihuly, ER 1298, 1445, and Chihuly was Moi's primary client for Moi's construction business, ER 1041-42. Moi recalls that his friend Chihuly "repeatedly" assured him he would be "compensated," and that the "accounting department" was tracking his contributions. ER 1380. With this long and enduring relationship built on trust, Moi had no need to hammer out exhaustive terms and conditions as though they were in a contract. Plus, the Copyright Act is designed out of the recognition that artists usually cannot "determin[e] their work's full value until after it has been exploited." *Dumas v. Gommerman*, 865 F.2d 1093,

22

1101 (9th Cir. 1989), *rejected on other grounds by Reid,* 490 U.S. at 739, 742 n.8 (citation omitted). So it was entirely reasonable not to negotiate an amount before paintings were sold. In the end, this is an equitable claim for promissory estoppel, not a breach of contract claim in which every material term must be spelled out.

A jury of Moi's peers should decide his promissory estoppel claim.

### (3)   Chihuly Still Fails to Carry His Burden of Showing that His Confidential Settlement Agreements Were Not Discoverable

Chihuly's brief fails to save the district court's protective order. To start, Chihuly does not deny that the district court applied the wrong legal standard when it asserted that, because "the settlement agreements are … inadmissible," ER 388.1, a protective order was proper. As Moi's opening brief pointed out, Rule 26 provides that information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b). By requiring the settlement agreements to be admissible, the district court applied an incorrect standard. Chihuly's brief does not even attempt to argue otherwise. *See* Chihuly Br. at 50-52.

Chihuly also does not deny that the district court failed to make necessary findings to justify the protective order under Rule 26(c). Moi's opening brief noted that Chihuly had made now showing of "good cause" under Rule 26(c) below, and the district court failed to make "specific findings 'to allow appellate review of the exercise of its discretion.'" Appellant's Br. at 41 (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors*, 307 F.3d 1206, 1212 (9th Cir. 2002)). Chihuly's brief does not

rebut Moi's argument on this point, effectively conceding it. *See* Chihuly Br. at 50-52.

On top of that, Chihuly does not challenge Moi's contention that Chihuly argued the wrong standard for relevancy below. While Chihuly argued in the district court that Moi had to make a "particularized" and "heightened showing that the settlement information sought is relevant," Dkt. #84 at 5 (quotations omitted), Chihuly's brief does not renew that argument on appeal. *See* Chihuly Br. at 50-52.

Finally, Chihuly does not deny that he had the burden of showing that the information was irrelevant under this liberal standard. *Compare* Appellant's Br. at 39, *with* Chihuly Br. at 50-52. He still does not, and he offers no explanation for why the settlement agreements were not relevant. Because "Rule 26 is to be liberally construed to permit broad discovery," *State Farm Mut. Auto Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016), the district court erred in ruling that the confidentiality agreements were irrelevant.

### (4)   <u>Chihuly's Brief Fails to Support the District Court's Attorney Fee Award</u>

An award of attorney fees "is not automatic" under the Copyright Act. *Doc's Dream, LLC v. Dolores Press, Inc.*, 959 F.3d 357, 363 (9th Cir. 2020) (citation omitted). For four main reasons, Chihuly's brief fails to show the district court's $1.6 million award should be upheld.

*First*, Chihuly's brief incorrectly flips the burden to Moi to show that Chihuly's fees were unreasonable. *See* Chihuly Br. at 59 ("Moi did not challenge the reasonableness of Appellees' rates or time below."). Chihuly argues that Moi "waived any such challenge on appeal." *Id.* (citing *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989)). But the reasonableness of Chihuly's claim to attorney fees *was* raised in the district court *by Chihuly*. By moving for attorney fees, Chihuly took on the burden of proving that the amount was reasonable, as Moi pointed out in his opening brief. Appellant's Br. at 51. The burden was not on Moi to prove Chihuly's fees were unreasonable.

The task was for the district court, not Moi, to determine whether Chihuly carried that burden. "A district court, using the lodestar method," explains this Court, "*must* determine a reasonable number of hours." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (emphasis added). To fulfill this duty, a district court "should exclude" any hours that "are excessive, redundant, or otherwise unnecessary." *Id.* at 1203 (quotation omitted). This task may unfold in one of two ways—either (i) by going line by line through the attorneys' time records, or (ii) "when faced with a massive application," as in this case, by "mak[ing] across-the-board percentage cuts." *Id.* (quotation omitted). But the district court did neither, relying instead on Moi's choice "not to review the time records to identify tasks or entries that may have been unnecessary, duplicative, or otherwise unreasonable." ER

5-6. The district court abused its discretion by blaming Moi for not doing what this Court's precedent required *the district court* to do. The court was not permitted to take Chihuly's attorneys' billing records at face value, because "those records are not dispositive." *Gonzalez*, 729 F.3d at 1202.

*Second*, Chihuly errs in arguing that the district court's finding of objective unreasonableness should be given deference. As Chihuly concedes, "'legal analysis and statutory interpretation'" are generally "reviewed *de novo*." Chihuly Br. at 54 (quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996)). As he also admits, a fee award will "'constitute[] an abuse of discretion'" if it is "'based on an inaccurate view of the law.'" *Id.* at 52 (quoting *Fantasy*, 94 F.3d at 556). Here, this Court should conclude that the district court's legal view was inaccurate, for the reasons discussed above and in Moi's opening brief. A decision to award fees must give "substantial weight to the objective reasonableness of the losing party's position." *Kirtsaeng v. John Wiley & Sons, Inc.*, __ U.S.__, 136 S. Ct. 1979, 1983 (2016). Because the district court here did not give the proper weight to the objective reasonableness of Moi's position, the award should be vacated.

Under the correct legal standards, Moi's claim to joint authorship was not frivolous. In finding otherwise, the district court stated only in conclusory fashion that Moi's claim was supported by a "paucity of supporting evidence." ER 4. The court did not make any specific findings of fact. *Id.* The court's general quibble

26

seemed to be that Moi did not "specific what original, artistic contributions he made to any of the works at issue." ER 6. But because the expressive process was so collaborative and fluid, Moi did not need to identify his specific brush strokes under *Gaiman*. Besides *Gaiman*, neither the district court nor Chihuly ever explain why Moi had to identify his separate contributions when Copyright Act itself provides that a "joint work" may include "inseparable" contributions. 17 U.S.C. § 101. But most damning for Chihuly is his admission in his deposition that even he cannot explain each artists' separate contribution to the paintings or say who—even himself—did what. ER 1470, 1472 (emphasis added). So Moi, rather than bringing a frivolous claim, was entirely consistent with Chihuly's own view of the collaborative process.

*Third*, because the district court should have given substantial weight to the objective reasonableness of Moi's claim, the other factors did not justify an astronomic fee award. The district court's finding of bad faith was especially untenable. To start, the district court decided not to levy monetary sanctions against Moi's counsel for much of the same litigation conduct cited in the court's fee award. SER 1-7. The district court acted arbitrarily by choosing not to levy sanctions against Moi's attorney but then, after nothing changed, to cited that same conduct as grounds for Moi to personally pay $1.6 million in attorney fees.

The district court also charged Moi with bringing his lawsuit "in the hopes of forcing defendants to pay a significant monetary sum in order to avoid embarrassment or damage to their reputations and business interests." ER 5. That is false. As Moi pointed out in his opening brief, the public has long known about Chihuly's health problems and the controversies about his authorship. *See* Appellant's Br. at 47-48 & n.4. And Chihuly's brief does not dispute the media reports or the public knowledge about these matters, which pre-date Moi's lawsuit. *See* Chihuly Br. at 56-58. While Chihuly's brief alleges that Moi made "threats" to disclose Chihuly's medical records and "vulgar … anecdotes," Chihuly Br. at 56, Chihuly cites only Chihuly's attorney's fee declaration, which in turn recites a hearsay conversation with no details, and which also mischaracterizes Moi's original demand letter. *Compare* ER 183 ¶ 24 (hearsay), *and* ER 189 ¶ 39.a.ii. (mischaracterization of demand letter), *with* ER 1443, 1445 (demand letter explaining that Chihuly's health problems and his close relationship with Moi supported Moi's claim that they mutually relied on each other—Chihuly for Moi's artistic contributions, and Moi for Chihuly to keep his promise to compensate Moi).

The district court itself seemed to recognize that Moi had contributed to the paintings: "the Court does not doubt that," it said, "in some respects and as to some paintings, plaintiff made original artistic contributions that were independently copyrightable." ER 19. Despite Chihuly's insistence that Moi was a total fraud, the

28

district court believed otherwise. "Was he contributing something of value? Absolutely, he was." ER 411. In fact, the district court seemed troubled that the Chihuly had paid Moi nothing: "what about the fact that Mr. Moi never got compensated for the time that he participated there?" ER 422. While the district court might not have accepted Moi's joint authorship claim, the court's findings of frivolousness and bad faith are irreconcilable with its beliefs that Moi made valuable and independently copyrightable contributions that should have been compensated.

*Fourth*, as discussed above, Chihuly's theories about joint authorship would undermine the Copyright Act's purposes. So, too, would upholding the district court's $1.6 million award, despite the U.S. Supreme Court's admonition that such fee awards must serve "the Copyright Act's essential goals." *Kirtsaeng*, 136 S. Ct. at 1989.

## C.    CONCLUSION

The district court's summary judgment and fee award should be reversed, and

Moi's claims should be remanded for trial. He should have his day in court before a

jury.

DATED this 16th day of October, 2020.

Respectfully submitted,


 /s/ Gary W. Manca
Philip A. Talmadge, WSBA #6973
Gary W. Manca, WSBA #42798
Talmadge/Fitzpatrick
2775 Harbor Avenue SW
Third Floor, Suite C
Seattle, WA  98126
(206) 574-6661

Lincoln C. Beauregard, WSBA #32878
Evan T. Fuller, WSBA #48024
Connelly Law Offices, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-0380

Attorneys for Appellant
Michael Moi

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume of limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,960 words as counted by Microsoft Word 2016, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 36(a)(6) because it has been prepared in a proportionally spaced serif typeface using Microsoft Word 2016 in 14-point Times New Roman.

DATED this 16th day of October, 2020.

Respectfully submitted,


 /s/ Gary W. Manca
Philip A. Talmadge, WSBA #6973
Gary W. Manca, WSBA #42798
Talmadge/Fitzpatrick
2775 Harbor Avenue SW
Third Floor, Suite C
Seattle, WA  98126
(206) 574-6661

Lincoln C. Beauregard, WSBA #32878
Evan T. Fuller, WSBA #48024
Connelly Law Offices, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-0380

Attorneys for Appellant
Michael Moi

31

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

  /s/ Kirstin E. Largent